Good morning, Your Honors. May it please the Court, my name is Erin Radican, attorney for Jacqueline Hoegel. I'm going to have you really speak into the microphone right there. Thank you, so we can hear you. Thank you. Good morning. May it please the Court, my name is Erin Radican. I'm the attorney for the appellant, Jacqueline Hoegel. I would like to reserve two minutes for rebuttal. Okay. I'll watch it, but you need to ultimately be responsible, but I'll try to help you out with your time. I understand, Your Honor. Thank you. So the first issue I would like to discuss is the Court's failure to take some remedial action after the government witness, Catherine Fung, broke down in front of the jury. And the government argued that there was not an adequate objection. I can't say that the Court should have not allowed Ms. Fung to testify, period. If you recall, the defense did at the outset make a motion in limine and expressed concern. And one of the bases for the motion in limine was because the evidence of the Ponzi scheme was irrelevant, and I think there was at least a tacit admission, acknowledgment that the evidence was highly prejudicial and would require a mini-trial on whether or not she was involved. There was no request for a curative instruction, was there? There was not, Your Honor. And in fact, there was at no point when someone actually said objection. It was just, I think the closest we got to that was, this is what I was afraid of, or something along those lines. That's correct, Your Honor. However, the Court specifically referred back to its, the defense counsel specifically referred back to his motion in limine. He had specifically said he was concerned about Ponzi scheme victims testifying. And the Court has a duty under Federal Rule of Evidence 403 to make an assessment as to whether evidence is unduly prejudicial and deprobative value. And I think the probative value of her emotional outburst was nil. There was no probative value. Is your position, whatever the quality of the specific objection, that the district court was very much aware of the issue? Yes, and I think that it was clear that the court was aware that the defense was objecting to the outbreak and was concerned that the outbreak would prejudice the jury. And I think that was a fair concern. Counsel, Judge Gould, if I could interject, could you please put your position in terms of the standard for plain error review so that we would have to say that the failure to sua sponte, do something about it, was an error, that it was plain, that it was substantial, and that it affected the fairness, integrity, or reputation of the court? If it's not corrected. Yes, Your Honor. I don't quite see how on this record you meet that last element, so. I do think that there was an abuse of discretion and there was an adequate objection. And I think the court made it very clear that it did not believe that her crying had anything to do with the Ponzi scheme or that it was evident, so that an objection would have been futile and the failure to object should not have waived this error. But I do think the error was plain and it was very prejudicial and it should have been evident to the court that breaking out, she was talking about e-mail communications between her and Ms. Hogle, about purchasing these CDs and about how Ms. Hogle encouraged her or persuaded her to purchase the CDs. And then after she came back, after a breakdown, she talks about how she invested $160,000 or $180,000, how there was an SEC investigation. I don't – I think the jury was aware. And there – Was there an objection to that later testimony? No, Your Honor. But there had already been an objection. What I'm saying is at that point, it's prejudicial because there had already been an objection and it said, I'm concerned about this emotional outburst. And I think that was sufficient to put the court on notice that this was a concern of unfair prejudice. The court should have just done a simple curative instruction and said it's irrelevant, disregard the emotional outburst. And I think that it was prejudicial because I think it was not lost upon this jury that they later learned there was an SEC investigation and that Ms. Hogle was involved in persuading her to buy CDs that had an 8.5 percent interest rate. And it was unnecessary. Even if we were to say that it was error, why wasn't it harmless in light of all the evidence that did come out during the trial? Ms. Hogle's sole defense was it was not willful. So this – the evidence that this emotional outburst was just very prejudicial, it was likely to tie her to the SEC scheme. And I think that likely hurt her, that it wasn't her defense, that it was not willful. I want to move on to the next issue, Your Honor, if that's okay. It's up to you. Okay. The next issue is this court, the district court, giving the defense this choice of either forego putting on any evidence relevant to her mental state and striking previous evidence of her mental state, or the court was going to allow the government to put on evidence of the Ponzi scheme. And the thing I want to address at the outset is I don't see how the defense opened the door simply by presenting evidence of Ms. Hogle's mental state and that she was having a nervous breakdown. It would have been more appropriate if the defense had said the nervous breakdown was due to some reason other than the Ponzi scheme. But the defense didn't open the door merely by providing evidence relevant to her mental state. The sense I have from this record is that the district court was not concerned that the door had been opened at that point, but that the door had been opened repeatedly throughout the process of the trial. What's your sense of that? Your Honor, I respectfully disagree. I think the court commented and noted the court said that the defense got close to it. And the government argued that the defense had got close to it. But the court never specifically held that the defense had already opened the door. That's why the court specifically said, well, I think I'm going to say that I'm going to strike all the testimony of the mental state, that she had a nervous breakdown, that she just could not function, that she was crying 24-7, which precluded the defense from putting on any other evidence about that. Otherwise, the government would be able to bring in highly prejudicial, irrelevant as the government acknowledged, irrelevant evidence of the Ponzi scheme. And the government already had evidence that there was an SEC investigation. Was that the only method of the defendant to establish willfulness? The mother's testimony? I don't think the record gives any indication of what other evidence might have been available. But it was the strongest. It appeared to me from reviewing the record, there was no other evidence, really. That was her only evidence, that she had a nervous breakdown and couldn't function and was crying 24-7. And she wasn't allowed to present that evidence. And I don't see how it opened the door to evidence of the Ponzi scheme. It might have been okay for the Court to say, well, defense, you can't argue that her having a nervous breakdown was because of some other reason. That might have opened the door. But this precluded her from bringing in any evidence that she had a nervous breakdown, which was probably the only defense she had to willfulness, was her mental state during this period. So it's a serious error and I think very prejudicial. Do you want to reserve the rest of your time? Yes, Your Honor. May it please the Court. Ben Kingsley for the United States of America. I want to address the nervous breakdown issue first, just really quickly to clear up a couple of things that counsel said. First, it was never the government's position that the fact that the defendant was under investigation for her role in a Ponzi scheme, it was never our position that that was irrelevant. It was relevant. It was just something that we knew that if we went into evidence on, and this is all at the motion in Lemonnet hearing where this was discussed, it would result in a much longer trial and would result in the defendant being able to put in a bunch of evidence or having to put into a bunch of evidence, rebutting her role in the Ponzi scheme. At its core, the government's theory was that the defendant lied on her tax returns for two related reasons. One of them was to minimize her role in this organization that was being investigated by the SEC and that she herself was being investigated for, and the other was because she didn't want to pay her taxes. And the government put into evidence evidence of the SEC investigation, but agreed at the outset not to identify the fact that she herself was under investigation and the impact that that had on her and her mental state. That was the decision that the government made, and the district court approved that decision, and that's how the case was tried. And I think the Court is right that throughout the trial, the defense made various suggestions or opened the door in various ways to the inference that she herself was the one who was under investigation for the Ponzi scheme. The nervous breakdown was the point at which the government couldn't, and the district court rightly ruled, that this couldn't continue, that we couldn't continue to make a misleading record in front of the jury about what had really happened in the summer of 2009. And specifically, the nervous breakdown, which was testimony from Mother, who, as defense counsel admitted below, was not a doctor, it wasn't a medical diagnosis, it was just a description of her state of mind, that she was essentially an emotional wreck at that time, was. Well, wasn't it that far fair testimony that she was distraught at that period of time? I mean, you certainly could cross-examine the fact that the mother is no expert and that there are all kinds of reasons why her observation may not be accurate and may be overstated, but is it an overreaction to say you can't have that testimony without also going into the Ponzi scheme? No, Your Honor, and I think there's two answers to that. The first is that it was prejudicial, the testimony was prejudicial in that it followed a long line of attempts by the defense to paint Ms. Hagel as a victim without actually explaining what was going on at that time. And the district court found that and said that this is prejudicial under Rule 403. But the district court's core ruling was that this was misleading and needed to be put into context, because the cause. But just help me, because it seems like Ms. Hagel's main defense was lack of willfulness. And so it's important to allow the theory of defense to come through in any trial. And it seems like, based on review of the record, any time evidence regarding her state of mind came up, you or the government's lawyer argued that Ms. Hagel opened up the door to the Ponzi scheme, and so I'm just trying to figure out how was Ms. Hagel able to present a complete defense, including her theory of the case, when every time she went in that direction, there was objection, Ponzi scheme? There was a lot of other evidence of willfulness that she put in. One of her primary defenses was that she was attempting to seek something called currently noncollectible status from the IRS, and there were a number of witnesses that went to this, the idea being that she thought that she wasn't going to have to pay any money to the IRS, and so what did she care? Her son testified about her state of mind and her grandma's seizures that she was suffering during that time, and her mother testified about, for a long time, about the various things that were going on in her life. It was just the point at which she says she has a nervous breakdown, she's a wreck, she can't function. And I want to be clear, what the government proffered it would get into evidence wasn't we're going to prove that she's guilty of the Ponzi scheme, it's we're going to prove that the thing that was driving her mental state at that time was the same thing that caused her to misreport her income on her tax returns. In other words, she gets sued by the SEC. The receiver takes all of her assets. And to the extent it's true that she was, that her state was as her mother described, it was being driven by the very conduct that then drove her to falsely file her tax returns. And I think it's helpful to imagine a different testimony about mental state. For example, let's say her mother had testified, I saw her the day that she walked her into her tax repair, and she was really drunk, and there's no way she could have known what she was doing at the time. The government's response wouldn't have been, that opens the door to the Ponzi scheme evidence. The government's response would have had to deal with that, would have had to cross-examine it in various ways. But it's not the same thing as saying she was an emotional wreck. She was an emotional wreck because the SEC had sued her for her role in a Ponzi scheme. So the government is being the doctor at this point, that the source of her emotional trial is the fact that she's involved in this investigation in the Ponzi scheme, as opposed to something else. That was the government's theory. And in fact, defense counsel essentially conceded that below during the recess in which this was discussed. On the record? On the record. He said, I stated in my opening that she was, that her world caved in when the SEC and the receiver came. And I agree that she was a mess. The defense counsel then went on to say, this isn't a medical diagnosis. I'm just saying that she was a mess at the time. I don't think there was any dispute that what was going on in her life at that time was that her employer that she had worked for for 10 years had been sued as a Ponzi scheme, that a receiver had taken all of her assets personally. Evidence that the government didn't get into, and the defense did actually through several witnesses, raising the fact that the defense's own assets were seized, it was her world caved in because she was suspected in a Ponzi scheme and she was being investigated. There's a lot of evidence the government would have tried to get in at that point, but it wouldn't have been about her being responsible. It would have been about what was going on in her life at that time and how it affected her mental state. And that's why I started by saying it was all relevant in the first place, and I think it would have passed a 403 balancing originally. But we didn't want to go there because we didn't want to have a whole separate mini trial, and I think the defense would have fairly been able to rebut it. Another point on the district court, and this goes to the Court's question about precluding a defense, the defendant could have chosen to not strike this testimony. I think the defense got something of a windfall to be permitted to rewind the trial a few minutes and allow that last bit of evidence to be taken off the record and keep the government from what I think at that point it could have fairly done in any event. The district court was a bit of a failure. Sotomayor, tell me what the government would have done. The government would have probably put in evidence, and the proffer below is that we would have put in evidence that she herself was sued by the SEC and was being investigated for this Ponzi scheme, that her clients were calling her, and I think government counsel proffered this below, asking for where their money was. The witness, Catherine Fung, for example, who broke down, there were lots of people who bought CDs from the defendant who now were calling her and asking for their money back, and that's in the record. There's also in the record, which we put in at sentencing, which the district court ended up not considering as part of its sentencing, was evidence that she had obstructed the SEC investigation and told her daughter not to talk to the SEC investigators. So while we would be here arguing whether the district court committed error by putting in entirely 403 evidence, would we not? Wouldn't that be the question to be before the court now? And that's what the district court said below, is that by the defense, try and have it both ways, and put in evidence of all this stress that she was under during this time, but not let the government put in the explanation for why she was under this stress, was going to cause – it was going to be an issue on appeal either way. I think the district court rightly said this is what you're going to complain about, but I think the district court would have been right in either direction given the testimony. One other thing that I want to respond to that the counsel said is the cross-examination of her mother I don't think fairly could have avoided getting into this. At the point in time when she says there was a nervous breakdown, I don't see how you cross-examine that witness without testing that statement by asking what was going on in her life that caused this particular mental state. It's – it was completely out of context and needed to be put in context for a fair record to be given to the jury. So talk to me about the sentencing enhancement before your time goes up. Here, she had a two-level bump because it was determined that at least $10,000 came from criminal activity? That's correct, Your Honor. And what's the guidelines say in terms of what do you have to prove in terms of the extent of the criminal activity? It sounds like you didn't pursue that with respect to the Ponzi scheme. I'm just trying to figure out was the district court adequately able to make that determination? So the – it was not contested at sentencing that the income was derived from criminal activity. Paragraph 4 of the PSR says the money came from a Ponzi scheme. And the defense, in fact, in their sentencing filing below, agreed with that and made the arguments essentially that, well, she didn't know at the time she was earning the income and or that she had to have been involved in the criminal activity herself. Our core argument now is the guidelines don't require that. The guidelines on their face just say that the income was derived from criminal activity, and they don't require any mens rea. The guidelines don't have a general mens rea requirement. This Court, in a number of opinions, has said it doesn't read mens rea requirements into guidelines that don't have them. And there's a lot of guidelines that do have requirements. And I've cited to some in the briefs. One that I didn't cite to in the briefs that I think is really directly on point is the structuring enhancement, which is 2S1.3, and includes an enhancement that's very similar to this one for unlawful – proceeds of unlawful activity and says new or should have known that the money was the proceeds of unlawful activity, which isn't in this particular guideline. If the Court has no further questions, I'd ask that the district court be affirmed. Thank you. First thing I'd like to address is with regard to the enhancement. The Court specifically found that in order for this enhancement to apply, it would have to find that she was involved in the criminal activity. Can you speak into the microphone, please? I'm sorry. You can pull it down. You can pull it down. Thank you. The district court found that it would have to find that she was involved in the criminal activity, as I think it was fair for the district court to say. She had to – you would have to have in the guideline that she do. The sentencing commission must have meant that she was involved in the criminal activity and therefore necessarily knew. And even the guideline the government talked about, 2S1.1, regarding money laundering, at least requires a knowledge element. And I think principles of notice and fairness require a knowledge element, and I think the evidence doesn't support a finding that she was involved in any criminal activity. And I want to address a couple of other things the government said. The government said that they wanted to provide evidence of the Ponzi scheme, and I didn't see anything when we're talking about excluding the defense witness. And by the way, the court struck all the mother's testimony, so none of that testimony came in. The government said it wanted to introduce evidence of the reason for the nerves breakdown was because of the Ponzi scheme. It didn't say it was going to limit it and not talk about the Ponzi scheme, and the government acknowledged it's not relevant, and that's in ER Volume 265. And I would urge the court to look back at the son's testimony, and I can provide that in full in the record. I don't believe he said he gave any basis for her mental state. And the other thing I want to point out is why is it relevant why she had a nervous breakdown? As the court pointed out at the beginning, it doesn't matter what the reason is. What was her mental state? She should have been allowed to provide that evidence. And I ask the court to reverse her convictions on these grounds. Thank you very much. We appreciate your presentations here today, both counsel. The case of United States v. Hogle will be submitted. Thank you very much.
judges: Gould, Murguia, Gritzner